UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-2540(DSD/JMM)

Peter T. Buecher,

Plaintiff,

v. **ORDER**

Independent School District No. 623, known as Roseville Area Schools; John Thein, individually and in his capacity as School Superintendent of Independent School District No. 623; E. Keith Smelser, individually and in his capacity as Assistant to the Superintendent; and Sarah Thompson, individually and in her capacity as Principal of Roseville Area Middle School,

Defendants.

Mark W. Gehan, Esq., Jennifer A. Jameson, Esq. and Collins, Buckley, Sauntry & Haugh, W-1100 First Bank Building, 332 Minnesota Street, St. Paul, MN 55101, counsel for plaintiff.

Maggie R. Wallner, Esq., Peter D. Gray, Esq. and Rider, Bennett, Egan & Arundel, 2000 Metro Center, 333 South Seventh Street, Minneapolis, MN 55402 and Daniel J.S. Becker, Esq., and Knutson, Flynn & Deans, 1155 Centre Pointe Drive, Suite 10, Mendota Heights, MN 55120, counsel for defendants.

This matter is before the court on defendants' motion for summary judgment (Docket No. 19). Based on a review of the file, record and proceedings herein, the court grants defendants' motion.

FILED 1-15-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 1-15-02
Deputy Clerk's Initials ______

**BACKGROUND**

Plaintiff Peter Buecher ("Buecher") commenced this action under 42 U.S.C. § 1983 against his former employer, defendant Independent School District No. 623 ("the district") and three of the district's employees. Plaintiff alleges that he was terminated from his position as a swimming coach in violation of his constitutional rights arising under the due process clause of the Fourteenth Amendment to the United States Constitution.

Plaintiff began working for the Roseville Area Schools in 1982. At all relevant times he was the head coach of the boys' and girls' swimming teams. Plaintiff was discharged by the district's school board on February 24, 2000.

In January 2000, the district began to receive reports that plaintiff had engaged in improper behavior and had made inappropriate comments towards current and former members of the Roseville girls' swim team. Between January 21 and February 1, 2000, the district conducted an investigation of these complaints by interviewing numerous students and parents of students.

On February 1, 2000, a meeting was convened by the district with plaintiff to discuss the complaints that had been raised against him.[1] During this meeting, plaintiff was accompanied by

---

[1] Prior to this meeting, in a memorandum dated January 22, 2000, plaintiff was notified that the district was "checking out a report alleging that [defendant] made inappropriate sexual comments and other behaviors [sic] toward current and former members of the (continued...)

Ralph Palmer ("Palmer"), a personal friend and an attorney-at-law who practices in Roseville, Minnesota. During the meeting, which lasted nearly two hours, the district officials questioned plaintiff about a series of complaints and allegations that had been raised against him by present and former members of the girls' swim team and by parents of present and former students and swim team members. During the meeting, plaintiff was asked about these allegations and then given a chance to respond. While plaintiff denied many of the allegations against him, he did acknowledge the veracity of several of the complaints and allegations. (See Buecher Dep. at 121-24, 126-28, 130-37, 142-44.)

On February 9, 2000, pending resolution of the matter, plaintiff was suspended with pay and informed that he was no longer allowed on school property or at school events. A school board meeting was scheduled for February 24, 2000. Shortly before that date, the district notified plaintiff that the school board would be considering the results of the investigation that had been conducted regarding the accusations of impropriety that had been made against plaintiff. Plaintiff was also informed that the board was likely to terminate his employment at that meeting.

---

[1](...continued)
Roseville swim team." (Gray Aff. Ex. B.) The memo went on to further inform plaintiff that, "[the district] will contact you as soon as possible after gathering more information." (Id.)

The school board met as scheduled on the evening of February 24, 2000. Prior to this meeting, the school district officials who had investigated the matter submitted a memorandum to the school board setting forth a summary of the conclusions that they had reached regarding the accusations against plaintiff.[2] After

---

[2] The summary of conclusions that the board reviewed included the following:

1. Buecher pulled down a female swimmer's swim suit exposing her breasts and then stuffed paper wrappers down her suit.
2. Buecher asked out individual female swimmers while they were still in high school. One girl accompanied Buecher to a casino after she turned 18, was asked to attend a wedding with him and was taken to his home. Other girls accompanied him to concerts or dinner.
3. Buecher used the "F" word in anger when speaking to one or more swimmers.
4. Buecher asked some girls swimmers to bend over and allow him to inspect areas of their bodies where they had shaved.
5. In written communications to female swimmers, Buecher made very personal statements, such as, "you've been very special to me and I've always wanted the best for you ... for the last few years I've kind of grown attached to you emotionally – you started meaning something to me (yes, it does happen to coaches) ...."
6. In another letter, to a swimmer, Buecher stated, "I kind of heard why you haven't wanted to keep in touch. Just wanted to say I'm sorry that I've ended up making you hate me. I didn't think having feelings for someone and wanting to have a close friend would cause this, but I guess I screwed up. Anyhow, I still want you to know you are still important to me and if you are ever interested in lunch or dinner, you're always welcomed."
7. Buecher wrote a letter to the mother of a swimmer chastising mother and daughter for not thanking him for graduation gifts he gave to the daughter.
8. Buecher made numerous sexually suggestive comments

(continued...)

considering the memo and hearing the testimony of several parents who were in attendance to express their views on the matter, the school board passed a resolution discharging plaintiff. Plaintiff was notified of his discharge by certified mail dated February 24, 2000. Plaintiff did not file for state judicial review following his termination nor did he request a review of his termination by the state commissioner of children, families and learning.

Plaintiff brought an action pursuant to 42 U.S.C. § 1983 against the school district alleging that he was deprived of a property and liberty interest without due process of law. Defendants now move for summary judgment. For the reasons stated, the court grants that motion and dismisses all of plaintiff's claims with prejudice.

## DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

---

[2](...continued)
to girls swimmers.

(Gray Aff. Ex. M.)

to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 250. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23.

**B. Plaintiff Was Not Denied Due Process**

At the outset, the court notes that this is not a case to determine if there was just cause to terminate plaintiff, but instead, whether defendants deprived plaintiff of a property

interest or infringed upon plaintiff's liberty interest without due process of law. These are the only claims that are cognizable under a § 1983 action. See 42 U.S.C. § 1983 (2001).

**1. Property Interest**

Public employees may have a property right in continued employment. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). When such property rights exist they are not created by the Constitution, but by an independent source such as state law. Id. If an employee has a property right in continued employment, he may not be discharged from his job without due process. Id. (holding that a public employee may not be deprived of a property interest in continued employment "except pursuant to constitutionally adequate procedures.")

As a preliminary matter, the parties here disagree over whether plaintiff had a property interest in his employment. Plaintiff argues that he had a property right in his job pursuant to Minn. Stat. § 122A.58,[3] while the school district argues that

---

[3] Minnesota Statute § 122A.58, which governs the termination of coaches, in relevant part, reads:

> Subdivision 1. Termination; hearing. Before a district terminates the coaching duties of an employee who is required to hold a license as an athletic coach from the commissioner of children, families, and learning, the district must notify the employee in writing and state its reason for the proposed termination. Within 14 days of receiving this notification, the employee may request in writing a hearing on the termination before the commissioner. If a hearing is requested, the commissioner must hold a hearing within 25 days according

(continued...)

plaintiff was an at-will employee.[4] The court concludes that it need not directly resolve this question, because even if the court assumes that plaintiff had a protected property interest, the court finds that he received adequate due process and his claims under § 1983 fail as a matter of law.

In Cleveland Bd. of Educ. v. Loudermill, the Supreme Court held that a hearing was necessary prior to the termination of a tenured public employee. 470 U.S. at 542. This hearing is intended to serve as "an initial check against mistaken decisions - essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. at 545-46. Rather than prescribe a set format for pre-termination hearings, the Supreme

---

[3](...continued)
> to the hearing procedures specified in section 122A.40, subdivision 14, and the termination is final upon the order of the commissioner after the hearing.

Minn. Stat. § 122A.58 (2001).

[4] Defendants argue that Minn. Stat. § 122A.58 does not apply to plaintiff since it is undisputed that plaintiff held a coaching position in which he was not required to hold a coaching license from the state. While there is a paucity of case-law from the Minnesota state courts construing this statute, after careful review, the court concurs with the defendants' position and concludes that plaintiff does not fall under the purview of this statute. However, since the court concludes that plaintiff received all the process that he was due, this finding is of little significance to the outcome of this case. Similarly, the court does not believe that Minn. Stat. § 122A.40 is applicable in this matter since it is undisputed that plaintiff was not employed by the district as a teacher required to hold a license from the state.

Court emphasized that "the essential requirements of due process ... are notice and opportunity to respond," and that "the tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546.

Here the pre-termination procedure afforded plaintiff by the school administrators satisfied the requirements established in Loudermill. See Coleman v. Reed, 147 F.3d 751, 754 (8th Cir. 1998)(holding that Loudermill does not imply that there must be a delay between the "notice" and the "opportunity to respond"); Riggins v. Bd. of Regents, 790 F.2d 707, 710 (8th Cir. 1986) (holding that employee did not have to be notified of charges prior to meeting with employer and "pretermination hearing need not be elaborate"). Plaintiff received written notice that the school district was "checking out" allegations that the "[defendant] made inappropriate sexual comments and other behaviors towards current and former members of the Roseville swim team" in the memorandum dated January 21, 2001. (Gray Aff. Ex. B.)

In addition, he was given detailed oral notice of the specific charges against him when he was confronted in the face-to-face meeting on February 1, 2000. See id.; Powell v. Mikulecky, 891 F.2d 1454, 1459 (10th Cir. 1989) (finding that confrontation in which employee was asked and answered two questions was sufficient pre-termination hearing under Loudermill). During this meeting the

officials representing the district spent nearly two hours discussing the allegations in detail. Also during this meeting, plaintiff was allowed to respond to each of the allegations. (See Buecher Aff. ¶ 3.) Plaintiff was also allowed to have present with him a personal friend who is an attorney admitted to practice law in the State of Minnesota.[5] Plaintiff also concedes that he admitted to some of the allegations. (See Buecher Aff. ¶ 3.)

In addition, plaintiff had a second opportunity to respond to the charges against him during the school board meeting that occurred on February 24, 2000.[6] It is undisputed that several days before this meeting, plaintiff was notified that the school board would be meeting on the evening of February 24, 2000, and that plaintiff was aware that the board would be discussing whether

---

[5] While the plaintiff asserts that Palmer was not present to "formally" represent him as legal counsel, the record does indicate that Palmer actively participated in the meeting, frequently raised objections to the district's questions, and advised plaintiff, on numerous occasions, as how to answer or not respond to questions. (See Smesler Dep. at 15-16; Buecher Dep. at 119-20; Palmer Aff. ¶ 4.)

[6] In light of this fact, the court concludes that plaintiff's reliance on Winegar v. Des Moines Indep. Cmty. Sch. Dist. is misplaced. 20 F.3d 895, 901 (8th Cir. 1994). Unlike Winegar, Boucher had the opportunity to directly address both the administrators who made the termination recommendation and the school board members who made the discharge decision. Put differently, the present case is distinguishable from Winegar because plaintiff *voluntarily chose* not to address, or even attend, the school board meeting where he was terminated.

plaintiff's employment should be terminated.[7] (See Buecher Dep. at 71; 109.) Plaintiff did not utilize this second opportunity to present his side of the story. The record reflects that plaintiff understood that he had the right to be present and that several people supporting him were going to attend the meeting to speak on his behalf. (Buecher Dep. at 70-72.) Furthermore, the record reflects that he had consulted and retained legal counsel prior to the school board meeting. (See Gehan Aff. Ex. A.) The fact that plaintiff decided not to attend was his own choice,[8] and defendants cannot be faulted for plaintiff's failure to take advantage of the additional opportunity to be heard. See Coleman, 147 F.3d at 754; Riggins, 790 F.2d at 711. The court thus concludes, that in accordance with Loudermill, the undisputed record abundantly reflects that plaintiff received all of the pre-termination process to which he was due.

Additionally, the court concludes that since plaintiff did not pursue the available post-termination process, he has waived any claim that he was denied adequate post-termination process. See

---

[7] Indicative of plaintiff's knowledge of the school board meeting is a letter dated February 23, 2000, that was sent on behalf of plaintiff by his attorney in which the district is informed that "[m]y client plans to attend the school board meeting scheduled for tomorrow, February 24." (Gehan Aff. Ex. A.) This letter also acknowledges that plaintiff understands that he faces possible termination at that meeting. (Id.)

[8] The record reflects that defendant was on his way to the meeting when he instead decided to watch the meeting on cable television at a friend's house. (See Buecher Dep. at 70-72.)

Krentz v. Robertson, 228 F.3d 897, 904 (8th Cir. 2000); Demming v. Hous. & Redevelopment Auth. of Duluth, 66 F.3d 950, 954 (8th Cir. 1995).[9] It was plaintiff's responsibility to initiate any post-termination judicial review in Minnesota state court. See Minnesota Rules of Appellate Procedure, Rule 115 (providing that certiorari review is initiated by the petitioner in Minnesota).

A terminated public employee waives a procedural due process claim when he refuses or fails to participate in the post-termination administrative or grievance procedures made available by the state. See Krentz, 228 F.3d at 904. In this case, plaintiff failed to pursue state administrative or state judicial review of the school district's termination decision.

---

[9] Plaintiff could have sought review of his termination in the state courts because, in Minnesota, a public employee's termination is a quasi judicial decision that may be reviewed by the Minnesota Court of Appeals by means of a writ of certiorari. See Willis v. County of Sherburne, 555 N.W.2d 277, 282 (Minn. 1996). Plaintiff could have petitioned for review of his discharge within 60 days of his receipt of notice of termination. See Minn. Stat. § 606.01; Johnson v. Indep. Sch. Dist. No. 281, 494 N.W.2d 270, 273 (Minn. 1992). This is a remedy that the Eighth Circuit has expressly endorsed as an adequate form of post-termination process. See Larson v. City of Fergus Falls, 229 F.3d 692, 697 (8th Cir. 2000). Plaintiff never applied for a writ of certiorari during the applicable 60-day period. Moreover, despite plaintiff's assertion that Minn. Stat. § 122A.58 applies to him, he failed to seek post-termination relief in accordance with that statute. See Dokmo v. Indep. Sch. Dist. No. 11, 459 N.W.2d 671, 676 (Minn. 1990); In re Hahn, 386 N.W.2d 789, 790-91 (Minn. Ct. App. 1986). However, as the court has determined, any hearing procedures afforded under Minn. Stat. § 122A.58 are irrelevant here since the statute does not apply to plaintiff. See, supra, at 8 n. 4.

Accordingly, defendants are entitled to summary judgment on plaintiff's property interest claim.

**2. Liberty Interest**

Plaintiff asserts that he has been deprived of a liberty interest without due process since he alleges that defendants published information regarding the accusations against him. The due process requirements pronounced in Loudermill apply equally to liberty and property interests. Coleman, 147 F.3d at 755; Schleck v. Ramsey County, 939 F.2d 638, 642, n. 5 (8th Cir. 1991) ("[t]he analysis of [Loudermill] applies equally to liberty interests and property interests.") For the reasons already discussed, the court concludes that plaintiff received all the process that he was due. Accordingly, defendants are entitled to summary judgment as a matter of law on plaintiff's liberty interest claim.[10]

**CONCLUSION**

Since plaintiff has not demonstrated a violation of his constitutional right to procedural due process, defendants are

[10] Additionally, the court believes that plaintiff's liberty interest claim fails as a matter of law because it is premised upon conduct that is not directly attributable to any of the defendants or arises from conduct that defendants were legally obligated to perform under Minnesota law including the making of required disclosures to the state board of teaching and department of economic security and the disclosure of information classified as public data under the Minnesota Government Data Practices Act. See Minn. Stat. § 13.02 and § 13.43; Minn. Stat. § 122A.20 subd. 2. These actions do not implicate a violation of plaintiff's liberty interests as a matter of law.

entitled to summary judgment on both the property and liberty interest claims.

Accordingly, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Docket No. 19] is granted in its entirety and plaintiff's claims are dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 15, 2002

David S. Doty, Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

*This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.*

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500